UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RANDY J. PIDKAMINY,

                                        Plaintiff,

            v.                                                      5:11-CV-865
                                                                        (FJS)

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                                        Defendant.
_____

APPEARANCES                              OF COUNSEL

OLINSKY LAW GROUP                        KAREN S. SOUTHWICK, ESQ.
300 South State Street                   HOWARD D. OLINSKY, ESQ.
5th Floor, Suite 520
Syracuse, New York 13202
Attorneys for Plaintiff

SOCIAL SECURITY ADMINISTRATION           MONIKA K. PROCTOR, ESQ.
OFFICE OF REGIONAL GENERAL
COUNSEL, REGION II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

SCULLIN, Senior Judge

MEMORANDUM-DECISION AND ORDER

I. INTRODUCTION

        Plaintiff Randy J. Pidkaminy brought this action pursuant to the Social Security Act (the

"Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the Commissioner of Social

Security's final decision denying his application for Supplemental Security Income ("SSI"). *See*

Dkt. No. 1.

Currently before the Court are the parties' cross-motions for judgment on the pleadings.

## II. BACKGROUND

Plaintiff protectively filed his SSI application with the Social Security Administration on July 25, 2008. *See* Administrative Record ("AR") at 67, 108-11. In his application, Plaintiff alleged disability commencing on March 8, 1993, stating the following conditions limiting his ability to work: degenerative bone disease, arthritis throughout the body, heart attack, and panic attacks, as well as a broken neck, jaw and arms. *See id.* at 122. During his interview at the Social Security Administration field office, Plaintiff also insisted that the interviewer add to his SSI application that he was legally blind. *See id.* at 108, 119.

On November 19, 2008, the Social Security Administration denied Plaintiff's SSI application based on its determination that Plaintiff was neither disabled nor legally blind. *See id.* at 70. On November 28, 2008, Plaintiff filed a written request for a hearing. *See id.* at 74-76. On December 29, 2009, Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") John P. Ramos. *See id.* at 27-66. On March 11, 2010, the ALJ ruled against Plaintiff, finding that he was not disabled within the meaning of the Act. *See id.* at 21. In his decision, the ALJ made the following findings:

> (1) Plaintiff had not engaged in substantial gainful activity since July 25, 2008, the date he filed his SSI application, *see* AR at 15 (citing 20 C.F.R. § 416.971 *et seq.*).
>
> (2) Plaintiff had the following severe impairments: status post right knee injury and degenerative joint disease of both knees, tachycardia, an anxiety disorder, a panic disorder, and alcohol abuse in remission, *see* AR at 15 (citing 20 C.F.R. § 416.920(c)).

(3) Plaintiff's other conditions – obesity, hypertension, diabetes, a "broken neck," polyarthralgia of the back, and a recent diagnosis of opioid [sic] addiction – did not impose more than mild or slight limitations in functioning and, therefore, were not severe, *see* AR at 15.

(4) Plaintiff's impairments, whether considered singly or in combination, did not meet or medically equal the listed impairments in 20 C.F.R. Part 204, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926), *see* AR at 16-18.

(5) Plaintiff retained the Residual Functional Capacity ("RFC") to lift and/or carry 10 pounds occasionally; lift and/or carry less than 10 pounds frequently; stand and/or walk at least 2 hours out of an 8-hour workday; sit for about 6 hours out of an 8-hour workday; occasionally climb (ramps/stairs), balance, stoop, kneel, crouch, and crawl; understand, remember, and carry out simple tasks; interact with co-workers and supervisors but should have limited contact with general public; sustain sufficient concentration and focus to maintain regular and continuing employment; and make simple work-related decisions in a low stress environment, *see* AR at 18.

(6) Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the . . . [RFC] determination," *see* AR at 18.

(7) Plaintiff had no past relevant work, was born on March 25, 1962, and was 46 years old, thus falling within the younger individual age category (between ages 45-49) on the date of his SSI application; had a high school education and was able to communicate in English; and that the transferability of Plaintiff's job skills was not an issue because he had not had past relevant work, *see* AR at 20 (citing 20 C.F.R. §§ 416.965, 416.963, 416.964, 416.968).

(8) Given Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform, *see* AR at 20-21 (citing 20 C.F.R. §§ 416.969, 416.969(a)).

(9) Plaintiff was not under a disability, as defined in the Act, since
July 25, 2008, the date he filed his SSI application, *see* AR at 21.

Plaintiff timely filed a Request for Review with the Appeals Council of the Social

Security Administration. *See id.* at 7-9. On June 16, 2011, the Appeals Council denied

Plaintiff's Request for Review; and thus the ALJ's decision became the Commissioner's final

decision. *See id.* at 1.

On July 25, 2011, Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3),

*see* Dkt. No. 1, and filed a supporting brief on April 13, 2012, *see* Dkt. No. 13. Defendant filed

an answer on January 26, 2012, *see* Dkt. No. 8, and a response brief on May 29, 2012, *see* Dkt.

No. 17.

# III. DISCUSSION

**A.    Standard of review**

Absent legal error, a court will uphold the Commissioner's final determination if there is

substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined

substantial evidence to mean "' more than a mere scintilla'" of evidence and "'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

To be eligible for SSI, a claimant must show that he suffers from a disability within the

meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful

activity ("SGA") by reason of a medically determinable physical or mental impairment that can

be expected to cause death or last for twelve consecutive months. *See* 42 U.S.C. §§ 423(d)(3),

1382c(a)(3)(D).  To determine if a claimant has sustained a disability within the meaning of the

Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA.  *See* 20 C.F.R. §§ 416.920(b), 416.972.  If so, the claimant is not disabled.  *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments.  *See* 20 C.F.R. § 416.920(c).  If not, the claimant is not disabled.  *See id.*
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings").  If so, the claimant is disabled.  *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do his past relevant work.  *See* 20 C.F.R. § 416.920(e), (f).  If so, he is not disabled.  *See* 20 C.F.R. § 416.920(f).
>
> 5) If the claimant cannot perform his past relevant work, the ALJ determines if he can perform other work, in light of his residual functional capacity [("RFC")], age, education, and experience.  *See* 20 C.F.R. § 416.920(f), (g).  If so, then he is not disabled.  *See* 20 C.F.R. § 416.920(g).  A claimant is only entitled to receive disability benefits if he cannot perform any alternative gainful activity.  *See id.*

*Deeley v. Astrue*, No. 6:08-CV-448, 2011 WL 454505, *2 (N.D.N.Y. Feb. 3, 2011).

The claimant bears the burden of proof on the first four steps of this process.  *See Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).  If the claimant satisfies his burden, at step five the burden shifts to the Commissioner to "'show there is other gainful work in the national economy [which] the claimant can perform.'"  *Id.* (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)) (other citation omitted).

**B.      The ALJ's assessment of medical opinions**

When assessing the opinions of a claimant's physicians, an ALJ must give controlling

weight to the opinion of a treating physician where it is "'supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with other substantial

evidence in the record.'" *Audi v. Astrue*, No. 07-CV-1220, 2009 WL 3199481, *13 (N.D.N.Y.

Sept. 30, 2009) (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28,

2009)); *see also* 20 C.F.R. §§ 404.1527(d)(2), 404.1513, 404.1512.  However, "'the opinion of

the treating physician is not afforded controlling weight where . . . the treating physician issued

opinions that are not consistent with . . . the opinions of other medical experts[.]'" *Arruda v.

Comm'r of Soc. Sec.*, 363 F. App'x 93, 95 (2d Cir. 2010) (quotation and other citation omitted).

If an ALJ does not give controlling weight to a treating physician's opinion, he must

"'give good reasons'" for not doing so.  *Audi*, 2009 WL 3199481, at *13 (quotation omitted).  In

such cases, the ALJ should consider "''(i) the frequency of examination and the length, nature,

and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the

opinion's consistency with the record as a whole; and (iv) whether the opinion is from a

specialist.''"  *Id.* (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28,

2009) (quoting *Clark v. Comm'r of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998))); *see also*

20 C.F.R. § 404.1527(d)(2).[1]

_____

[1] In addition, where an ALJ finds against the claimant, he must set forth the specific
reasons for the weight he assigned to a treating source's opinion.  *See* Social Security Ruling
("SSR") 96-2p, 1996 WL 374188, *5 (July 2, 1996); *see also Lunan v. Apfel*, No. 98-CV-1942,
2000 WL 287988, *5 (N.D.N.Y. Mar. 10, 2000) (holding that remand was necessary because the
(continued...)

### 1. Dr. Spencer

In this case, the ALJ did not err in his assessment of Dr. Spencer's opinion insofar as the ALJ found that Dr. Spencer's opinion that Plaintiff was limited in his ability to work was inconsistent with his own treatment notes and other evidence in the record. *See* AR at 17, 19.

Dr. Spencer found that Plaintiff (1) was unable to meet competitive standards in his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms, and was seriously limited in his ability to work in coordination with or proximity to others without being unduly distracted and (2) was unable to perform at a consistent pace without a large number of rest periods, as well as deal with normal work stress, interact appropriately with the general public, and maintain socially appropriate behavior. *See id.* at 295, 388-90, 439-58. However, Dr. Spencer's notes, dated January 27, 2009, indicate that Plaintiff was working part-time as a security guard. *See id.* at 449; *Coughlin v. Comm'r of Soc. Sec.*, No. 5:06-CV-497, 2008 WL 2357166, *13 (N.D.N.Y. June 4, 2008) (holding that an ALJ properly considered claimant's mental limitations in determining his RFC and properly accorded his treating psychiatrist's assessment little weight, where the doctor's own treatment notes, as well as the medical record as a whole, contradicted his findings); *accord Izzo v. Comm'r of Soc. Sec.*, No. 5:07-CV-1211, 2011 WL 817503, *5 (N.D.N.Y. Mar. 2, 2011).

Furthermore, although on December 23, 2009, Dr. Spencer noted that Plaintiff's hands were "always tremulous," *see* AR at 17, 389, several previous medical examinations by three different physicians demonstrated normal hand function, *see id.* at 239, 241, 243. In addition,

---

[1](...continued)
ALJ did not discuss the weight he assigned or the reasons for assigning such weight to treating source opinions as 20 C.F.R. § 404.1527(d) requires).

Plaintiff reported that he enjoyed playing cards, *see id.* at 133, 305, and cooking, *see id.* at 134, which is inconsistent with his reported level of trembling hands. Moreover, the ALJ stated that he had specifically looked for and observed no tremors in Plaintiff's hands at the hearing. *See id.* at 17; *see also Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (acknowledging that, although an ALJ's observations may be assigned only "limited weight," the ALJ may "take account of a claimant's physical demeanor in weighing the credibility of her testimony as to physical disability"); *accord Gates v. Astrue*, 338 F. App'x 46, 49 (2d Cir. 2009). Furthermore, although Dr. Spencer concluded that Plaintiff could not use public transportation, Dr. Spencer's own treatment notes indicated that Plaintiff used public transportation, *see AR* at 570; and Plaintiff also stated that he used public transportation, *see id.* at 132.

The opinions of two State agency review consultants also contradicted Dr. Spencer's opinion. Dr. Shapiro, a State agency psychologist, opined that, although Plaintiff might have some difficulties with consistently maintaining attention and concentration, as well as difficulty with adequately dealing with stress, he was capable of understanding and following simple instructions and directions; performing simple and some complex tasks with supervision and independently; learning new tasks, regularly attending to a routine, and maintaining a schedule; and relating to and interacting appropriately with others. *See id.* at 302. Another State agency consultant, Dr. Meade, provided a substantially similar opinion. *See id.* at 332-34; *see also Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing *Schisler*, 3 F.3d at 567-68 (indicating that, where evidence in the record supports the conclusions of non-examining sources, such opinions can "override treating sources' opinions provided they are supported by evidence in the record")).

Courts generally do not take an ALJ's conclusion that a treating physician's own treatment

notes contradict the record as a whole at face value; rather, they require the mentioning of specific findings that would support such a conclusion. *See Briest v. Comm'r of Soc. Sec.*, No. 5:07-CV-121, 2010 WL 5285307, *5 (N.D.N.Y. Dec. 17, 2010) (holding that the ALJ failed to follow the guidelines for evaluating the opinion of a treating physician by merely stating that the claimant's psychiatrists' treatment notes were inconsistent with his overall ability to engage in gainful activity and failing to consider other factors found in 20 C.F.R. § 404.1527(d)(2)); *see also Moore v. Astrue*, No. 07-CV-5207, 2009 WL 2581718, *9 (E.D.N.Y. Aug. 21, 2009). Here, however, the ALJ specified what weight he accorded to Dr. Spencer's opinion and provided sufficient reasons for doing so. *See* AR at 17, 19. The ALJ also considered the length of the treating relationship, the fact that Dr. Spencer was a specialist, and all the evidence on which Dr. Spencer relied to support his opinions. *See id.* at 16-17; *see also id.* at 290-97, 345-46, 376-77, 388-90, 439-58 (Dr. Spencer's treatment notes and reports[2] indicating that, although Plaintiff had been diagnosed with anxiety and panic disorders, the treatment notes provided "little insight" into Plaintiff's mental state and indicated normal mood, cooperative personality, good response to medications, absence of complaints, working part-time, taking courses at an educational institution, cooperation and good insight, normal intellect, and absence of limitations in activities of daily living or memory). The ALJ also noted and explained the various inconsistencies between Dr. Spencer's treatment records, Plaintiff's own statements, and the opinions of non-examining State agency consultants. *See* AR at 16-17, 19; *see also* 20 C.F.R. §§ 404.1527(c)(2),

---

[2] Although Plaintiff contends that "a significant portion of Dr. Spencer's treatment notes are close to illegible," thereby arguing that the ALJ should have attempted to recontact Dr. Spencer, *see* Plaintiff's Memorandum at 17, the Court was able to decipher the majority of these notes.

416.912(e), 416.927(c).

Finally, because the record is complete with regard to Dr. Spencer's treatment opinions, the ALJ did not have a duty to seek additional information from him. *See Rosa*, 168 F.3d at 79 n.5 (stating that, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim" (citing *Perez*, 77 F.3d at 48)). Therefore, the Court concludes that the ALJ properly accorded little weight to Dr. Spencer's opinion.

### 2. Drs. Buerkle and Flaks

For the following reasons, the Court finds that the ALJ properly accorded "little weight" to the opinions of Drs. Buerkle and Flaks. First of all, the record does not support a conclusion that Dr. Buerkle is or ever was Plaintiff's treating physician. There is nothing in the record to indicate that his involvement in Plaintiff's treatment extended beyond the December 23, 2008 office note expressing the conclusion that Plaintiff was "Totally Disabled," *see* AR at 342, and the ALJ's noting of Dr. Buerkle's 2003 note that indicated that Plaintiff had arthritis of both knees, *see id.* at 19. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (stating that there was insufficient evidence in the record to compel a finding that a doctor was the claimant's treating physician, absent clear evidence in the record that the doctor's involvement with the claimant extended beyond writing one letter to the SSA); *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (holding that the ALJ is "entitled to rely not only on what the record says, but also on what it does not say" (citations omitted)). Thus, the Court finds that the treating physician rule

does not apply to Dr. Buerkle; and, consequently, the requirements of 20 C.F.R. §§ 404.1527, 416.927, and SSR 96-2p do not apply. *See Hall v. Astrue*, 677 F. Supp. 2d 617, 629 (W.D.N.Y. 2009); 20 C.F.R. § 404.1502 (providing that "[t]reating source means your own physician . . . who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an *ongoing* treatment relationship with you" (emphasis added)).

Likewise the evidence in the record does not support a finding that Dr. Flaks was Plaintiff's treating physician. Aside from the 2009 Physician Statement-Determination of Employability, the record is devoid of any treatment notes. *See* AR at 343-44. Furthermore, Dr. Burgun from Syracuse Community Health Center noted that Plaintiff had been discharged from Dr. Flaks' care in 2001 – seven years before the relevant period under review. *See id.* at 518; *Hall*, 677 F. Supp. at 630 (holding that a non-treating physician's assessment that plaintiff was "totally disabled" was not entitled to controlling weight because "'the Federal regulations make clear that whether a physician believes an applicant is "disabled" is irrelevant, since this determination is reserved to the Commissioner'" (quotation omitted)).

Alternatively, even if these doctors had been Plaintiff's treating physicians, the ALJ would have nevertheless been correct in assigning little weight to their opinions. First, the ALJ properly decided not to accord their opinions "controlling weight" because there was nothing in the record to demonstrate that they were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques'" and were "'not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)) (other citations omitted). Dr. Buerkle did not provide any opinion as to Plaintiff's functional limitations; he merely stated that Plaintiff was "Totally Disabled." *See* AR

at 342. Similarly, Dr. Flaks did not give any opinion regarding Plaintiff's functional capacities but stated that he was capable of "No activity (0 hrs/wk)." *See id.* at 343-44. As noted, however, such disability determinations are reserved for the Commissioner. *See Snell*, 177 F.3d at 133 (quotation omitted); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (quotation and other citation omitted); SSR 96-5p, 1996 WL 374183 (July 2, 1996).

Furthermore, in determining what weight the ALJ should allocate to non-controlling medical opinions of treating physicians, the ALJ must consider various factors, such as "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Schaal*, 134 F.3d at 503 (citing [20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)]). In this case, there was minimum contact between Plaintiff and Drs. Buerkle and Flaks, which did not extend beyond a single note/statement with regard to Plaintiff's employability. Further, the record is devoid of any evidence to support Dr. Buerkle's statement that Plaintiff was "Totally Disabled," *see* AR at 342, and Dr. Flaks's statement that Plaintiff was capable of "No activity (0 hrs/wk)," *see id.* at 343-44.

Accordingly, for all of the above-stated reasons, the Court concludes that the ALJ properly accorded little weight to the opinions of Drs. Buerkle and Flaks.

### 3. Non-examining State agency review consultants

"Generally, 'the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts[.]'" *Burgess*, 537 F.3d at 128 (quoting *Halloran*, 362 F.3d at 32). This is

because "'[g]enuine conflicts in the medical evidence are for the Commissioner to resolve[.]'" *Id.* (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)); *see also Snell*, 177 F.3d at 133. The Second Circuit has held that the opinions of non-examining sources may override those of the treating sources, provided they are supported by evidence in the record. *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (citing 20 C.F.R. §§ 404.1527(f), 416.927(f)) (other citations omitted); *accord Diaz*, 59 F.3d at 313 n.5 (citation omitted); *see also Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (stating that, "[b]ased on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician" (citation omitted)).

In this case, the ALJ accorded great weight to the opinion of the State agency review physician, Dr. Putcha, and that of the State agency review psychologist, Dr. Meade. *See* AR at 19-20. The ALJ accorded such weight to the opinions of these consultative examiners because (1) they were based on very thorough examinations and the examiners' level of expertise; (2) they were consistent with the record as a whole; and (3) they were well-documented and provided by specialists who were keenly trained in the Social Security Administration's disability regulations.[3] *See id.*

---

[3] SSR 96-6p notes that

> State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. As members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings), they consider the medical evidence in disability cases and make findings of fact on the medical issues, including, but not limited to, the existence and

(continued...)

Dr. Putcha's findings support the ALJ's conclusion that Plaintiff could perform the exertional demands of sedentary work. *See id.* at 21. After reviewing the record, Dr. Putcha concluded that, although Plaintiff had complaints of knee pain and the MRI showed degenerative changes, as well as a possible tear of medialscus and deficient ACL, he could occasionally lift and carry up to ten pounds; sit at least six hours and stand at least two hours in an eight-hour workday; and could push and pull without limitation. *See id.* at 311.

Furthermore, the findings and opinion of Dr. Ganesh, a consultative orthopedist, support Dr. Putcha's opinion with regard to Plaintiff's functional abilities. *See id.* at 305-06. The ALJ noted in his opinion that Plaintiff underwent an "orthopedic examination by a consultant of the Administration in October 2008." *See id.* at 19. This consultant was Dr. Ganesh. *See id.* at 305. The ALJ underscored that Dr. Ganesh's examination revealed the following: "a limping gait; some limitations in movement and/or tenderness involving the cervical and lumbar spines, right shoulder, and left knee; a normal station, no need for assistive devices; the ability to fully use his hands, negative SLR; 5/5 motor strength and no spasms." *See id.* at 19, 305-06. The ALJ further noted that Dr. Ganesh had concluded that Plaintiff had "moderate" limitations for sitting, standing, walking, climbing, lifting, carrying, pushing, pulling, and bending. *See id.* at 19, 306.

Moreover, the diagnostic imaging showing arthritis in the right knee but no other

---

[3](...continued)
> severity of an individual's impairment(s), the existence and severity
> of an individual's symptoms, whether the individual's
> impairment(s) meets or is equivalent in severity to the
> requirements for any impairment listed in 20 CFR part 404, subpart
> P, appendix 1 (the Listing of Impairments), and the individual's
> residual functional capacity (RFC).

SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e).

abnormalities, *see id.* at 19, 236, 256, 262, 385, 410, 419-20, 432, as well as physical

examinations between 2005 and 2009 which, with the exception of occasional tenderness,

edema, or swelling in the right knee, repeatedly showed normal findings, *see id.* at 231, 234-36,

239, 241, 259, 264-65, 270, 273, 354, 361, 370-71, 465-74, 477-78, 549, further support Dr.

Putcha's opinion.  Further, despite Plaintiff's complaints of severe knee pain, his doctors noted,

on several occasions, that he walked normally.  *See id.* at 264 (note dated September 12, 2008);

548 (note dated February 7, 2008).  Although physical examinations and imaging showed some

acute injuries – such as decreased range of motion in his third finger after closing it in a door, *see*

*id.* at 270, tenderness and swelling in the wrist after falling, *see id.* at 259, 262, and nasal bone

fracture, *see id.* at 254, the record does not indicate that these were permanent injuries.  Finally,

Plaintiff's daily activities, including cooking, cleaning, shopping, watching television, playing

cards, weight lifting, pushing a broken-down car, pushing a hot tub, lifting a heavy heater, and

helping friends move furniture, support Dr. Putcha's opinion that Plaintiff was capable of

performing sedentary work.  *See id.* at 129-34, 234, 236, 273, 301-02, 385, 430.

With regard to Dr. Meade, he opined that Plaintiff was only "moderately limited" in these

areas of function.  *See* AR at 332-33.  Dr. Meade also concluded, among other things, that

Plaintiff was not significantly limited in his ability to (1) remember locations and work-like

procedures; (2) understand, remember, and carry out short and simple instructions; (3) complete

a normal workday without interruptions from psychologically-based symptoms; (4) respond

appropriately to supervisors and coworkers in a small work setting; (5) adapt to changes in a

work setting; and (6) make simple work-related decisions.  *See id.* at 332-34.

As the ALJ noted, Dr. Meade's conclusions are supported by the October 2008 report of

another consultative psychologist, Dr. Shapiro, *see id.* at 17, 301-03, as well as by the findings of Plaintiff's treating psychiatrist, Dr. Spencer, dated October 19, 2009, January 13, 2010, and April 22, 2011, *see id.* at 345, 564-72. Specifically, Dr. Spencer indicated that Plaintiff was cooperative, had controlled impulsivity, normal thought process, good insight, fair judgment, good attention and concentration, and no limitations in understanding and memory, *see id.* at 345-46, 564-65, 569-71; that Plaintiff had good prognosis with the ongoing medication therapy, *see id.* at 346, 565, 567; and that Plaintiff was capable of performing all activities of daily living, *see id.* at 570. Moreover, Dr. Spencer listed no limitations in Plaintiff's work functioning. *See id.* Dr. Spencer concluded that Plaintiff's functioning in the areas of sustained concentration, persistence, and social interaction was limited only when he was having severe anxiety and panic attacks. *See id.* at 571. Dr. Meade's findings are also supported by Plaintiff's daily activities, which, as the ALJ noted, included using public transportation, going to church, attending Alcoholics Anonymous meetings, shopping, camping, attending cook-outs, and so on. *See id.* at 17, 134.

For all these reasons, the Court finds that the ALJ properly assigned "great weight" to the opinions of the State agency consultants and properly applied the "treating physician" rule.


**C.     The ALJ's credibility determination**

When assessing a claimant's credibility, the ALJ must consider both his medical records and his reported symptoms. *See* 20 C.F.R. § 404.1529. A claimant's statements about his condition, on their own, are not enough to establish disability. *See id.*; SSR 96-7p, 1996 WL 374186, *1 (July 2, 1996). A claimant's complaints of pain and limitation are, however,

"'entitled to great weight where . . . [they are] supported by objective medical evidence.'" *Futia v. Astrue*, No. 1:06-CV-0961, 2009 WL 425657, *6 (N.D.N.Y. Feb. 19, 2009) (quoting *Simmons v. U.S.R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992)).

If a claimant's testimony is not supported by medical evidence, the ALJ employs a two-step process to evaluate that claimant's reported symptoms. *See* SSR 96-7p, at *2. First. the ALJ determines if the claimant has medically determinable impairments that could produce the alleged symptoms. *See* 20 C.F.R. § 404.1529(a); SSR 96-7p, at *2. Second, if the impairments do exist, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms to determine the extent to which those symptoms limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(a); SSR 96-7p, at *2. In so doing, the ALJ considers (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures the claimant takes or has taken to relieve his pain or other symptoms; and (vii) any other factors concerning the claimant's functional limitations and restrictions due to his pain or other symptoms. *See* 20 C.F.R. § 416.929(c)(3)(i)-(vii); *see also* SSR 96-7p, at *3.

As this Court has stated, at the second step, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Saxon*, 781 F. Supp. 2d at 105 (citing SSR 96-7p, 1996 WL 374186, at *2 (SSA 1996)). "One strong indication of

credibility of [a claimant's] statements is 'their consistency, both internally and with other information in the case record.'" *Id.* (citing SSR 96-7p, 1996 WL 274186, at *5 (SSA 1996)); *see also* 20 C.F.R. § 416.929(c)(3); SSR 96-4p, 1996 WL 374187, *1 (July 2, 1996) (stating that, "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings").

After considering the objective medical evidence, the claimant's demeanor and activities, subjective complaints, as well as any inconsistencies between the medical evidence and the claimant's subjective complaints, an ALJ may accept or disregard the claimant's subjective testimony as to the degree of impairment. *See Saxon*, 781 F. Supp. 2d at 105 (citations omitted); *see also Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891, *10 (E.D.N.Y. June 27, 2007) (citation omitted); *Martone v. Apfel*, 70 F. Supp. 2d 145, 151 (N.D.N.Y. 1999) (citation omitted). An ALJ who rejects the subjective testimony of a claimant "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quotation and other citation omitted); *see also* SSR 96-7p, at *4. Failure to follow this standard constitutes legal error. *See Horan v. Astrue*, 350 F. App'x 483, 484 (2d Cir. 2009).

In this case, the ALJ stated that,

> [a]fter careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms; however,

> the claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to the extent
> they are inconsistent with the above [RFC] assessment.

*See* AR at 18.

Despite Plaintiff's assertion to the contrary, at the second prong of the inquiry, the ALJ

did consider Plaintiff's treatment records and medications. *See* AR at 19-20. The fact that the

ALJ included this analysis in a different portion of his opinion is of no practical significance.

*See Izzo*, 2011 WL 817503, at *6 n.2 (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.

1982)).

As to medications, the ALJ noted that, instead of using a regular medical provider,

Plaintiff repeatedly visited hospital emergency rooms with unsubstantiated claims of pain and

demonstrated "drug-seeking behavior." *See* AR at 19, 21. Various courts, including this one,

have held that "[a] claimant's misuse of medications is a valid factor in an ALJ's credibility

determinations." *Metz v. Astrue*, No. 1:06-CV-1509, 2010 WL 2243343, *14 (N.D.N.Y. Apr. 21,

2010) (citing cases), *report and recommendation adopted*, No. 1:06-CV-1509, 2010 WL

2243347 (N.D.N.Y. May 31, 2010). The record supports the ALJ's notation of Plaintiff's drug-

seeking behavior. *See* AR at 238 (requesting stronger medication with narcotics for treatment of

knee pain, where an examination of the knee and x-ray results did not show any acute disease or

fracture; 247-48 (fifteen visits to ER within one year); 262 (patient is a "frequent flyer to the

Emergency Department, frequently comes in requesting pain medications for his knee"); 265

(stating that, although it was difficult to assess the true extent of Plaintiff's pain, it did not seem

to warrant more than Lortab). On March 20, 2005, Dr. Prasad noted that she would not prescribe

narcotic medications to Plaintiff "without any objective evidence." *See id.* at 269. Similarly, Dr.

Reed noted that it would be inappropriate to prescribe narcotic medication, given Plaintiff's history of drug abuse. *See id.* at 265. Likewise, Dr. Prince stated that the emergency department would not supply Plaintiff with narcotic prescriptions. *See id.* at 267. Finally, an Emergency Provider Record from St. Joseph's Hospital, dated June 28, 2009, indicates "narcotic dependence." *See id.* at 392.

As to Plaintiff's complaints of pain, the ALJ noted that, although the record confirmed that Plaintiff had a history of surgeries on his right knee, there was little evidence in the record, apart from the November 2007 MRI, to support Plaintiff's musculoskeletal concerns and that his allegations of pain were valid. *See id.* at 19. This conclusion is also supported by the record. *See id.* at 234-35; 238-41; 247-48, 257-74, 347-55; *see, e.g.,* 251, 257 (no obvious deformity or fracture); 548 (Plaintiff appeared to be walking normally when he did not know he was being observed). The ALJ also considered Plaintiff's heart condition and blood pressure ratings and did not find any major problems. *See id.* at 19, 363-75, 391-438, 459-511; *see also Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (holding that, where an ALJ's findings are supported by substantial evidence, courts "must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" (citation omitted)).

Furthermore, the ALJ considered Plaintiff's daily activities, which included, among other things, cooking, cleaning, washing laundry, camping, shopping, watching television, playing cards, using public transportation, going out, and attending church. *See* AR at 16, 17; 129-39; *see also* 20 C.F.R. § 404.1529(c)(3)(i); *Taylor v. Barnhart*, 83 F. App'x 347, 350 (2d Cir. 2003) (holding that ALJ properly discounted claimant's subjective complaints of pain where claimant was able to cook, clean, do laundry, attend class, drive, shop, and swim); *Cornell v. Astrue*, 764

F. Supp. 2d 381, 400 (N.D.N.Y. 2010) (holding that claimant's credibility was undermined by her testimony that she tended to her personal hygiene; that she sometimes cared for her three-year-old niece; and that she was able to use public transportation to travel and indeed traveled to the hearing by bus (citations omitted)).

The ALJ also considered other factors, such as Plaintiff's inconsistent work record, as well as his inconsistent statements about his work record. *See* AR at 20; *see also* 20 C.F.R. §§ 404.1529(vii), 416.929(vii); SSR 96-7p. A claimant's work history is one of the factors an ALJ may consider in assessing a claimant's credibility. *See Johnson v. Astrue*, 748 F. Supp. 2d 160, 173 (N.D.N.Y. 2010) (citing SSR 96-7p); *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability"); *Farley v. Comm'r of Soc. Sec.*, No. 5:10-CV-536, 2011 WL 4074372, *14 n.25 (N.D.N.Y. Feb. 22, 2011), *report and recommendation adopted*, No. 5:10-CV-536, 2011 WL 4072114 (N.D.N.Y. Sept. 13, 2011). In this case, Plaintiff stated in one report that he had not worked since 1984. *See* AR at 122. In another report, he stated that he had stopped working in 1998. *See id.* at 140. At the ALJ hearing, Plaintiff testified that he had been laid off in 2001. *See id.* at 35-36. Later at that same hearing, after the ALJ had pointed out that the Commissioner had information about him working in 2004 and 2008, Plaintiff admitted that he had, in fact, worked in 2004 and 2008 at the Salvation Army, Dollar Tree, and Labor Ready. *See id.* at 64-65.

Furthermore, the ALJ noted other evidence of Plaintiff's credibility issues. Specifically, the ALJ noted evidence that Plaintiff had been untruthful in the past in his pursuit of disability

benefits. *See id.* at 20.[4]  In this case, the ALJ specifically noted that Plaintiff had asked his

physician to lie in a letter to Social Services to excuse him for missing a hearing.  *See* AR at 20,

545.  On another occasion, Plaintiff asked another doctor to provide him with a letter indicating

that he was 100 percent disabled.  *See id.* at 20, 518.  When the doctor refused, Plaintiff became

verbally abusive.  *See id.*  Moreover, the same doctor indicated that, in reviewing Plaintiff's

records, he discovered his disability papers, dated April 22, 2003, December 10, 2003, and June

20, 2008, stating that Plaintiff was capable of working full-time.  *See id.* at 530.  Furthermore,

the SSA interviewer noted that Plaintiff was an "angry individual," who insisted that the former

add to the latter's application that he was legally blind, despite the interviewer's observation that

Plaintiff could see.  *See id.* at 119.  Additionally, Plaintiff has filed numerous prior disability

claims with the SSA, with the most recent claim being denied in 2007 because of the failure to

establish disability.  *See id.* at 20, 117-18.  The record does not indicate that Plaintiff's prior

condition has deteriorated.

 Finally, the ALJ did not determine that Plaintiff was completely untrustworthy.  Despite

the findings of "serious credibility issues," *see* AR at 20, the ALJ nonetheless found that Plaintiff

suffered from several medically determinable impairments, *see id.* at 15, and that his statements

were "not credible *to the extent* they [were] inconsistent with the above [RFC] assessment," *see*

*id.* at 18 (emphasis added); *see also Punch v. Barnhart*, No. 01 Civ. 3355, 2002 WL 1033543,

---

 [4] Several courts have considered claimants' prior untruthful statements in reviewing ALJs' credibility evaluations. *See, e.g., Echevarria v. Astrue*, No. 3:08-CV-01396, 2010 WL 21190, *5 (D. Conn. Jan. 5, 2010) (holding that the ALJ properly rejected the fundamental premise of claimant's disability claim and found that claimant was untruthful about the extent of her alleged impairments' impact on her RFC); *Hernandez. v. Bowen*, No. 86 Civ. 8354, 1987 WL 26793, *2 (S.D.N.Y. Nov. 25, 1987) (noting claimant's prior untruthful statements related to his marital status, bank accounts, and withheld rent (citations omitted)).

*16 (S.D.N.Y. May 21, 2002) (holding that the ALJ's credibility determination was not "clearly erroneous" because the finding was not that the claimant was entirely untrustworthy; rather, the ALJ found that the claimant suffered from a number of medically determinable impairments).

For all these reasons, the Court finds that the ALJ applied the proper legal standard in evaluating Plaintiff's credibility and that there was substantial evidence in the record to support his credibility determination.


**D.     The ALJ's Step-five determination**

At step 5 of the analysis, "'the burden . . . shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform.'" *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation and other citations omitted); *see also Brown v. Astrue*, No. 11-CV-519, 2012 WL 3067461, *9 (N.D.N.Y. July 26, 2012) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983) (stating that, at this step, the ALJ is required to perform a two-part analysis to (1) assess the claimant's job qualifications by considering his physical ability, age, education, and work experience, and then (2) determine whether jobs exist in the national economy that the claimant could perform)).

Ordinarily, an ALJ may resort to the applicable medical vocational guidelines, commonly referred to as the "Grid."[5] *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986) (citing 20

---

[5] "The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2
(continued...)

C.F.R. Pt. 404, Subpt. P, App. 2 (1986)).  The Grid focuses on a claimant's exertional limitations;

however, if a claimant suffers from additional "nonexertional" impairments, the ALJ's reliance

on the Grid may not be controlling.  *See id.* (citing 20 C.F.R., Pt. 404, Subpt. P, App. 2

§ 200.00(e)(2) (1986)).  Specifically, "where the claimant's work capacity is significantly

diminished beyond that caused by his exertional impairment the application of the grids is

inappropriate," and the ALJ may be required to consult a vocational expert.  *Id.* at 605-06; *accord*

*Rosa*, 168 F.3d at 82 (citations omitted).  However, "the mere existence of a nonexertional

impairment does not automatically require the production of a vocational expert nor preclude

reliance on the guidelines."  *Bapp*, 802 F.2d at 603.  "[A]pplication of the grid guidelines and the

necessity for expert testimony must be determined on a case-by-case basis."  *Id.* at 605; *see also*

*Buschle v. Astrue*, No. 5:10-cv-1535, 2012 WL 463443, *5 (N.D.N.Y. Feb. 13, 2012) (quotation

omitted); 20 C.F.R. § 404.1566(e) (stating that the ALJ has discretion regarding whether to resort

to the services of a vocational expert).  Testimony of a vocational expert is required only "when a

claimant's nonexertional impairments significantly diminish his ability to work – over and above

any incapacity caused solely from exertional limitations – so that he is unable to perform the full

range of employment indicated by the [Grid]."  *Bapp*, 802 F.2d at 603.  The Second Circuit has

defined the term "significantly diminish" as "the additional loss of work capacity beyond a

negligible one or, in other words, one that so narrows a claimant's possible range of work as to

deprive him of a meaningful employment opportunity."  *Id.* at 606 (footnote omitted).  On the

---

[5](...continued)
(S.D.N.Y. 1996); *see also* 20 C.F.R. § 404.1567(a).  "Upon consideration of the claimant's
residual functional capacity, age, education, and prior work experience, the Grid yields a decision
of 'disabled' or 'not disabled.'"  *Brown*, 2012 WL 3067461, at *10 (quoting 20 C.F.R.
§ 404.1569, § 404 Subpt. P, App. 2, 200.00(a)).

other hand, "negligible reductions in work capacity caused by nonexertional impairments will not invalidate the presumptions created by the grids[.]" *Id.* at 606 n.1.

Furthermore, SSR 85-15 provides that "the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, *4 (1985). Thus, "[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." *Id.*; *see Brown*, 2012 WL 3067461, at *10 (quotation omitted).

In *Brown*, this Court held that the ALJ's step-five analysis was flawed and required remand because it was "necessarily dependent" on the ALJ's RFC assessment. *See Brown*, 2012 WL 3067461, at *11. In that case, the ALJ assessed the claimant's physical ability and concluded that he retained the RFC to perform the full range of sedentary work; found that the claimant's non-exertional impairments had little to no effect on her occupational base of unskilled sedentary and light work; and classified the claimant as a younger individual. *See id.*

In contract, in *Buschle*, this Court upheld the ALJ's step-five determination that the claimant's nonexertional impairments would not significantly limit the range of work permitted by his exertional limitations. *See Buschle*, 2012 WL 463443, at *5. The Court reasoned that, despite the claimant's difficulties interacting with supervisors and co-workers and his potential for problems coping with changes in his work setting, the Commissioner's consultant opined that the claimant's abilities in this regard were only mildly or, in the case of the claimant's ability to respond appropriately to changes in a routine work setting, moderately impaired. *See id.* Thus,

this Court concluded that the ALJ's decision to forego consultation with a vocational expert was proper. *See id.*

In this case, as in *Buschle* and unlike in *Brown*, there is substantial support in the record for the ALJ's determination. Specifically, the opinions of the State agency specialists, Drs. Meade and Shapiro, generally support the ALJ's finding that Plaintiff retained the abilities to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal appropriately in a routine work setting. *See* AR at 18, 302, 334. Specifically, Dr. Meade concluded that, although Plaintiff's allegations of limited ability were partially credible, he was able to understand, execute, and remember simple instructions and work-like procedures; maintain attention and concentration for at least two-hour intervals; sustain a normal workday and workweek and maintain a consistent pace; respond to supervisors and coworkers appropriately in a small setting but might have some difficulty dealing with the general public; and adapt to changes in a routine work setting and use judgment to make simple work-related decisions. *See id.* at 334. Similarly, Dr. Shapiro concluded that, although Plaintiff might have difficulty with consistently maintaining attention and dealing with stress, he was capable of understanding and following simple instructions; performing simple and some complex tasks, both with supervision and independently; regularly attending to a routine and maintaining a schedule; learning new tasks and making some appropriate decisions; and relating to and interacting appropriately with others at least some of the time. *See* AR at 302. Finally, with respect to Dr. Spencer's opinion that Plaintiff was limited in his ability to work, as noted above, the ALJ properly accorded this opinion little weight because it was inconsistent with Dr. Spencer's own treatment notes and other evidence in the record. *See* AR at 17, 19; *compare, e.g.,*

-26-

*id.* at 295, 388-90, 439-58 and 449; 390, 570.

For all these reasons, the Court finds that the ALJ properly relied on the Grid alone to conclude that Plaintiff retained the necessary RFC to perform other gainful work in the economy.

## IV. CONCLUSION

After thoroughly reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: January 22, 2013
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge